UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| PAUL A. GEMMINK, | : |
| Plaintiff, | : |
| v. | : File No. 1:12-CV-32 |
| JAY PEAK, INC., | : |
| Defendant. | : |

**RULING ON MOTION FOR**
**SUMMARY JUDGMENT & MOTION TO EXCLUDE**
(Docs. 44, 45)

I.   Introduction

In this diversity action commenced in February 2012, pro se plaintiff Paul A. Gemmink ("Gemmink" or Plaintiff) asserts a premises liability claim against Defendant Jay Peak, Inc. ("Jay Peak" or Defendant) stemming from an alleged February 2011 collision between Gemmink and an unidentified skier or snowboarder on Jay Peak's premises. (Doc. 1 ("Compl.").)  Jay Peak moves for summary judgment dismissing the complaint in its entirety (Doc. 44) and to exclude Gemmink's medical expense, personal expense, and medical transportation expense claims (Doc. 45).  Gemmink opposes summary judgment (Docs. 46, 60), but has not responded to the motion to exclude.  For the following reasons, Defendant's motion for summary judgment is granted and its motion to exclude is denied as moot.

II.     Background[1]

On February 21, 2011, Paul Gemmink, an Ontario resident, and his daughter, Christine Gemmink (Christine), were paying guests skiing at Jay Peak ski resort in Jay, Vermont.  On the run of the incident, Gemmink and Christine descended the Spillway trail, eventually entering and stopping on the Northwest Passage trail.  Christine proceeded down the Northwest Passage trail to the intersection with the Kokomo trail where she turned and proceeded to the base of the ski lift. When she reached the lift, Gemmink was no longer behind her.  About fifteen minutes later, she saw ski patrollers transporting an injured skier and recognized her father as that skier.  At her deposition, Christine stated that she saw a jump near the trees on the skier's right side of the trail where the Northwest Passage trail turned on to the Kokomo trail.  (Doc. 44-3 at 9.)

Jay Peak Ski Patroller William Vore was dispatched to an incident at the intersection of Northwest Passage and Kokomo trails.  When Vore arrived, he observed Gemmink lying on his back off the skier's left side of the Kokomo trail.  Gemmink has no recollection of the incident. Christine does not know where Gemmink's "accident actually occurred." See Docs. 57 at 1, 60 at 2.

III.    Discussion

    A.    Pro Se Litigant

Because Gemmink is a pro se litigant, his submissions are held "to less stringent standards than formal pleadings drafted by lawyers." Hugues v. Rowe, 449 U.S. 5, 9 (1980) (citation omitted).

---

[1] The facts are gleaned from the parties' submissions, specifically their respective statements of fact and responses.  (Docs. 44-1, 60, 62, 64.)  Jay Peak provided the required notice to pro se litigant, see D. Vt. L.R. 56(e), after Gemmink had filed his opposition to the summary judgment motion.  See Docs. 44, 46, 53.  Gemmink availed himself of the opportunity the Court provided to file a supplemental memorandum and/or evidence.  See Docs. 54, 60.  Both his original opposition and supplemental filing, however, failed to comply with Local Rule 56(b), which requires a party opposing summary judgment "must provide a separate concise statement of disputed material facts."  Because the document Jay Peak served on Gemmink did not include required language regarding a statement of disputed facts, the Court ordered Gemmink to file a statement of disputed material facts, which he did.  See Docs. 61, 62.

While a "special solicitude" is appropriately accorded to a pro se litigant, Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006), nonetheless, a pro se litigant is not exempt from compliance with relevant rules of procedural and substantive law, Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983).  The Court notes Gemmink is an attorney registered to practice in Ontario, Canada. Gemmink Aff. ¶ 1 (Doc. 33).

B.  Motion for Summary Judgment

In this diversity action, the Court applies federal procedural law and Vermont substantive law.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  Summary judgment is appropriate only where the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The Court must resolve ambiguities and draw inferences in favor of the non-moving party.  Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (citation omitted).

The court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."  Fischl v. Armitage, 128 F.3d 50, 56 (2d Cir. 1997) (internal quotation marks and citation omitted).  Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.  See, e.g., Fed. R. Civ. P. 56(e) 1963 advisory committee's note; Anderson, 477 U.S. at 255.

To prove his negligence claim, Gemmink must show (1) Jay Peak owed him a duty, (2) Jay Peak breached that duty, (3) actual injury resulted, and (4) a causal link between the breach and the injury.  Zukatis v. Perry, 682 A.2d 964, 966 (Vt. 1996).  Gemmink bears the burden of proof and

may "not overcome [the burden] by the introduction of facts generating only conjecture, surmise or suspicion." Marshall v. Milton Water Corp., 270 A.2d 162, 164 (Vt. 1970). Instead, he must garner "direct[] support[] by some evidence" of each issue to be proved. Id. Jay Peak moves for summary judgment arguing Gemmink has failed to come forward with evidence to establish the standard of care, i.e. duty, that the alleged standard or duty was breached, or causation. (Doc. 44.)

Gemmink alleges Jay Peak breached its duty to maintain its facilities in a reasonably safe condition in a myriad of ways. Compl. ¶ 14(a)-(e). The Court determines whether a duty is owed and the scope of that duty. Buxton v. Springfield Lodge No. 679, No. 2012-398, 2014 WL 2136468, --- A.3d --- (Vt. May 23, 2014). A ski area has a duty "to warn of or correct dangers which in the exercise of reasonable prudence in the circumstances could have been foreseen and corrected." Dalury v. S-K-I. Ltd., 670 A.2d 795, 800 (Vt. 1995) (internal quotation marks and citations omitted). Jay Peak argues Gemmink must come forward with expert testimony in support of the standard of care and breach of that standard because "ski industry practices and compliance with reasonable ski resort operator safety principals [sic] . . . are beyond the lay understanding of jurors." (Doc. 44 at 8-9.) Gemmink responded with an expert report dated over two months after Jay Peak's motion. The report states: "Jay Peak is reasonably required to prevent or warn against the risks by enforcing their own standards, policies, procedures and common industry practice regarding jumps that are built on trails by patrons." (Doc. 57-1 at 8). It concludes: "Jay Peak[] violated it's [sic] own high standards, policy, procedures and industry standards and failed to properly communicate, monitor, control, mitigate and remove the risks posed by jumping in non designated areas or jumps built on trails by patrons," id. at 9.

Assuming without deciding Gemmink has come forward with sufficient evidence from which a reasonable inference could be drawn in his favor on the elements of duty and breach, he has failed to do so in support of the element of causation. Gemmink alleges the cause of his incident

4

was another skier or snowboarder flying off the jump--the one Christine Gemmink saw on the side of the trail--and hitting him from behind. (Doc. 1 ¶ 9; Doc. 44-2 at 8, 13; Doc. 60 at 4.)

"Speculation and conjecture are no proof in him who is bound to make proof." Bolduc v. Coffin, 329 A.2d 655, 657 (Vt. 1974) (internal quotation marks and citation omitted). Gemmink's theory that Jay Peak allowed a jump to remain where it should not have been in the absence of which another skier or snowboarder would not have struck him is premised on speculation that another skier or snowboarder navigated the jump and speculation that the skier or snowboarder struck him as a result. Christine Gemmink's testimony that she saw a jump on the side of the trail is insufficient to create a disputed issue of material fact because it does not do more than support one necessary fact of Gemmink's conjecture as to the cause of his injuries. Crediting her testimony, as the Court must, that a jump existed, there remains no evidence of a skier or snowboarder hitting Gemmink. Gemmink is not entitled to shift the burden of proof to Jay Peak to counter these circumstances by simply positing a theory of causation. See Bolduc, 329 A.2d at 657-58. Gemmink has failed to come forward with evidence that Jay Peak permitted a jump to exist that was the cause of his injury. The fact that an accident or injury occurred is not evidence of negligence. See Calvert v. Katy Taxi, Inc., 413 F.2d 841, 844 (2d Cir. 1969) (further noting "if injury is caused by the negligence of someone that negligence must be brought home to the defendant in the action before the plaintiff may be permitted to go to the jury"). The record is devoid of admissible evidence tying the alleged jump and unknown third party skier/snowboarder to his injury other than speculation and conjecture.

Conclusory general allegations of negligence, unsupported by competent evidence tending to establish the essential elements of negligence, are insufficient to defeat a summary judgment motion. Gemmink's submissions--his affidavit (Doc. 60) and attached documents (Docs. 60-1 to 60-6 (including the incident report form, expert report, and other unauthenticated documents), and his

daughter's affidavit that references Gemmink's (Doc. 57)--do not establish a material question of fact.  In the absence of admissible evidence creating a genuine issue of material fact, Gemmink may not proceed with his claim.  Accordingly, while providing Gemmink the "special solicitude" due a pro se litigant, Triestman, 470 F.3d at 474-75, because there is no evidence in the record from which a reasonable inference could be drawn in favor of Gemmink on the required element of causation, Jay Peak's motion for summary judgment is granted.

      C.      Motion to Exclude

Jay Peak renews its motion to exclude medical expense, personal expense, and medical transportation expense claims alleging Gemmink has "failed to meet the mandatory disclosure requirements under the Federal Rules, failed to provide evidence in response to Interrogatory and/or Request to Produce, failed to support his claim via expert testimony, and failed to supplement under F.R.C.P. 26(e) for each of these damage elements."  (Doc. 45 at 1.)  Jay Peak relies on Federal Rule of Civil Procedure 37(c)(1) which allows a court to bar use of withheld information "to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Jay Peak asserts Gemmink's initial disclosures and interrogatory and request to produce responses did not include required computation or documentation of claimed expenses and did not include requested records or evidence of medical or personal expenses.  (Doc. 45 at 3-5.)  Jay Peak seeks an order preventing Gemmink "from presenting any claim or evidence of any medical expenses, personal expenses, and/or medical travel expenses as damages at trial."  (Doc. 45 at 5.)  Gemmink did not respond to the motion.

Because Jay Peak's motion for summary judgment is granted, the motion to exclude medical, personal, and medical transportation expense damage claims is moot.

IV.	Conclusion

For the above reasons, Jay Peak's motion for summary judgment (Doc. 44) is GRANTED. Jay Peak's motion to exclude (Doc. 45) is DENIED as moot. The case is dismissed.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 23rd day of June, 2014.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge